No. 37,758

HENSLEY HILL, VERONICA MILLER, DOSS WHITE, EMMA KUYKEN-DALL, F. B. WHITE, CHAS. GRAVES, CHAS. DIXON, R. L. EVANS, BERNHARD KOESTEL, RUSSELL CROTTS, H. O. MILLER, AL. MILLER, JOHN DEUPSER, HAROLD KOESTEL, CLAUDIAN FOUNTAIN, F. E. KRAUSE, ROSS MCCOY, FRED DELLENBAUGH, HARRY HILL, and O. L. WILLIAMS, *Appellees*, v. THE PARTRIDGE COÖPERATIVE EQUITY EXCHANGE, a corporation; and B. R. ANDERSON, B. E. TEDDER, W. C. PEIRCE, TED BUCKLEY, JOHN KOESTEL, FRANK SCHARDINE, and CLYDE WARNOCK, as officers and directors of said corporation, *Appellants*.

(214 P. 2d 316)

Opinion filed January 28, 1950.

*Frank S. Hodge,* of Hutchinson, argued the cause, and *Roy C. Davis, Eugene A. White,* and *Robert Y. Jones,* all of Hutchinson, were with him on the briefs for the appellants.

*Abraham Weinlood,* of Hutchinson, argued the cause, and *Don Shaffer,* of Hutchinson, was with him on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action in which the plaintiffs sought to enjoin the cancellation of their stock in the defendant corporation or to obtain alternative relief. From a judgment in their favor the defendants appeal.

The record discloses that under date of April 3, 1915, The Partridge Coöperative Equity Exchange was chartered as a corporation organized for profit, with a capital stock of $10,000 divided into 400 shares of $25 each. Under date of May 3, 1920, the charter was amended by increasing the capital stock to $20,000 divided into 800 shares of $25 each.

On February 16, 1946, the instant action was commenced. In their petition the plaintiffs alleged that the defendant corporation was a corporation under the laws of Kansas and that the other defendants were its officers and directors and that plaintiffs were at all times involved owners and holders of stock in the corporation; that the corporation had an authorized capital of $20,000, represented by 800 shares of common stock of $25 each issued to approximately 115 shareholders and which had paid five percent dividends for the past several years; that the members' equity over liabilities was in excess of $50,000, and that the value of each share of common stock was more than $62.50; that in response to a notice to vote on five certain proposals (later mentioned in detail) a meeting of the shareholders was held and the proposals with the exception of No. 4 were purportedly adopted; that such adoption was obtained by the use of false statements and other misrepresentations not necessary to detail; that plaintiffs were present at that meeting and objected to the proposals, especially No. 2, and after the meeting objected to their being carried out as provided therein; that since the purported adoption of the proposals and especially No. 2, the defendants have proceeded with plans for carrying out proposal No. 2 and threaten to call in and cancel the present stock of the plaintiffs and do all things necessary to effect the terms of that proposal; that plaintiffs will thus be deprived of their property and rights as represented by their shares, including the right to dividends, against their will and without compensation other than as provided by proposal No. 2, which compensation is inadequate, all of which is to plaintiffs' loss and detriment and in violation of their rights. After pleading they had no adequate remedy at law, plaintiffs prayed that the defendants be enjoined from calling in or cancelling their stock, and if it be determined they had such right that they be enjoined from doing so unless the value of plaintiffs' stock be determined at a proper valuation and such value paid them, and for other relief.

The proposals above referred to were as follows: No. 1 was that

the association accept the benefits and be bound by the provisions of G. S. 1935, ch. 17, art. 16, known as the coöperative marketing act, and that accordingly the second and sixth articles of the corporate charter be amended, the proposed amendments being set forth. The second article provided that the corporation was organized as a nonprofit farmers' coöperative association and set forth the character of business in which it proposed to engage. The sixth article stated the capital stock to be $20,000 divided into 800 shares of common stock of the par value of $25 each, provided who could be owners, for purchase of stock of noneligibles, and that each eligible holder of common stock should be entitled to only one vote in any meeting of the stockholders regardless of the number of shares held by him. Proposal No. 2 read as follows:

"2. To authorize and empower the board of directors to take up all the present outstanding stock of the association at 115 cents on the dollar of the par value thereof by issuing therefor new common stock and certificates of indebtedness payable as hereinafter provided and bearing interest at the rate of four percent per annum, on the following bases, to-wit:

"(1) A $25 share of new common stock and $3.75 in certificates of indebtedness for one share of the present common stock (having a par value of $25) held by each member who is a bona fide producer of agricultural products handled by the association and $28.75 in certificates of indebtedness for each additional share of the present outstanding common stock held by each member; and (2) $28.75 in certificates of indebtedness for each share of present outstanding common stock held by every member who is not a bona fide producer of agricultural products handled by the association.

"Said certificates of indebtedness shall be payable upon dissolution or liquidation of the association or earlier at the discretion of its board of directors, provided, that any member who is ·ineligible to own stock or who withdraws from the association may have same paid 120 days after demand, and further provided that the board shall not have authority to exercise its discretionary power to retire same as to members for 10 years from the date of issue."

Proposal No. 3 provided for a complete revision of the bylaws, copies of which had been sent to each member. Proposal No. 4 authorized the pledging of assets to and the doing of business with the Wichita Bank for Cooperatives, and Proposal No. 5 authorized the construction of a new elevator.

Intervening pleadings and motions are not set forth. The amended joint and several answers of the defendants, after alleging the petition did not state facts sufficient to constitute a cause of action, alleged in substance that under procedings which are set

forth in detail the proposals as noted were adopted and the charter amended; that the proceedings were certified to the secretary of state and the charter and amendments were duly recorded in the office of the register of deeds of Reno county on March 1, 1946, and the corporation became a coöperative within the meaning of G. S. 1935, ch. 17, art. 16, as of that time; that on February 22, 1946, and prior to the change the directors declared a five percent dividend and ordered a 100 percent proration of the net savings for the year ending February 28, 1946, all in accordance with the charter and the bylaws of the association as existing prior to March 1, 1946, and all actions in accepting the provisions of the above statute, amending the charter, adopting bylaws, empowering the board to issue certificates of indebtedness had been done in accordance with law. At length defendants pleaded that no action had been taken to call in plaintiffs' stock; that plaintiffs had been advised that only those who desired voluntarily to exchange their stock for new stock and certificates of indebtedness should do so, and that the action filed was premature; that the capital stock remained the same; that in proceeding thus voluntarily the defendants were not depriving the plaintiffs of any of their rights in the book value or accumulated surplus; that such surplus or book value was not available to any stockholder until liquidation in view of the fact the bylaws prohibited dividends of more than five percent and each plaintiff stockholder would have the same right to his proportionate share upon liquidation that he would have had in any event. Defendants further pleaded that the proposed plan was fair and equitable and gave each member surrendering his stock for certificates of indebtedness a better value or property right than he had had; following which are extended argumentative allegations to demonstrate that the plan adopted was fair and equitable to all parties. In their prayer defendants asked that plaintiffs be denied relief and that their action in amending the charter and all other things set forth be approved.

Thereafter the plaintiffs filed a supplemental petition to set forth the newly adopted bylaws, alleging that unless restrained the defendants would put into operation the plan set forth, issue revolving fund certificates, set up a system of patronage capital which would do violence to the capital structure as previously existing and deprive plaintiffs of their property without adequate compensation and without due process and impair the obligations of the contracts of plaintiffs as stockholders. The newly adopted bylaws consisted

of six articles containing numerous sections and are designed to cover the operations of the coöperative under the amended charter. For present purposes we note only that provision is made for the issuance of revolving fund certificates for the purpose of raising capital funds, and for their retirement, for patronage capital and its accumulation and distribution to members and nonmembers and for revolving capital and its retirement. Although the bylaws state that certain persons may become a member of the "association" by acquiring a share of common stock, and that common stock shall not be transferred to one not eligible, the bylaws contain no provision for the issuance of common stock or for regulations with respect thereto. In making this statement we do not overlook the sixth article of the amended charter to which reference has been made. Nor do these bylaws contain any provisions that appear to recognize, approve or otherwise take notice of proposal No. 2 heretofore quoted. Defendants' answer to the supplemental petition is in effect a denial that the defendant corporation has obligated itself to the payment of refunds to nonmembers. Plaintiffs filed a reply to the amended answer which in effect is a general denial.

On the issues thus joined a trial was had at which a considerable amount of oral testimony was taken and during which many written documents were offered. The history of the corporation was developed to a considerable degree, showing amendments to the charter, a part of the bylaws from time to time; that early bylaws fixed a dividend of not over three percent on stock; that the bylaws of 1934 fixed the rate at six percent; and that the bylaws of April 12, 1944, in effect when the events complained of occurred, provided that a participating membership could be obtained by the purchase of one share of stock, but that no profits other than the interest dividend should be paid until a total of eight shares had been paid for "which is the limit that may be owned by any member." Under article 4 of those bylaws, providing for distribution of earnings, it was provided that from the net earnings or savings the board of directors should pay interest at a rate not in excess of four percent, at the discretion of the board, on the outstanding stock. It is here observed that it is not clear under what authority the corporation paid dividends at five percent as it is alleged it did in its answer heretofore set forth. Although there was some dispute in the evidence concerning the values placed on assets, the balance sheets and operating statements of the corporation for the year ending Feb-

ruary 28, 1946, showed a net worth of $43,857.43 and for the following year the showing was $24,817.29. The facts concerning preliminaries leading up to the submission of the proposals and their adoption were also shown. It was also developed that the values for the certificates of indebtedness in proposal No. 2 were not based on any claimed values but were arbitrarily fixed.

The trial court rendered an opinion covering all phases of the controversy but inasmuch as some phases are not involved in this appeal they are only briefly noticed. It held that if there were any misrepresentations in the proceedings leading up to the adoption of the proposals they were not material and would not render the election void; that two-thirds of the members voted in favor thereof (see G. S. 1935, 17-1621) and the election was valid; that the corporation had the legal right to amend its charter and that the amendments and the procedure in accordance therewith was legal and valid and permitted by statute. It then considered whether a court of equity should examine the proposition of reissuing of certificates of indebtedness for the arbitrary value fixed in proposal No. 2 for the purpose of determining whether the proposition was just and equitable to those members who did not wish to make such an exchange of their presently held stock, concluding that if it had such a right and duty then it must determine whether the actual proposition embodied in proposal No. 2 was equitable, and if not what remedy the plaintiffs should have. After finding that the rights of minority stockholders should be protected and that a court of equity might inquire into the actions of the majority and the facts and circumstances and make a determination, the trial court stated it had done so and from the evidence had determined that the action of the majority of the stockholders in fixing the amount to be paid for the stock of the plaintiffs was unjust, inequitable and arbitrary and unjustly deprived plaintiffs of a part of the property in which they had an equitable share. Answering defendants' argument that all stockholders were treated alike and impartially, the court stated the inequity appears only to those who did not wish to continue as shareholders, and that although there had been restrictions on their stock, they had certain rights in the assets of the corporation which the action taken by the majority disregarded; that even though as claimed by the defendants the court could not force a majority to buy out a minority at any equitable valuation fixed by the court, nor appoint a receiver for the corporation because the majority action was inequitable, the court did have power to enjoin the corporation from carrying out a prop-

osition that was unjust and inequitable to the minority, and that although it could not force the majority to purchase from the minority, it would be justified in fixing a monetary value upon plaintiffs' stock and to examine any method for payment of it before permitting the corporation to take measures that would amount to a confiscation of a large part of the equity of the plaintiff stockholders. The court concluded that it should enjoin the corporation and its board of directors from putting into effect the plan contained in proposal No. 2. After considering the subject matter further it determined the value of each share to be $63.80. It further concluded that the method of issuing one new share for one old share and the issuing of a certificate of indebtedness at four percent interest was not in and of itself an inequitable method of converting the corporation under G. S. 1935, ch. 17, art. 15, into a purely coöperative nonprofit one under G. S. 1935, ch. 17, art. 16, that although the provision for calling in such certificates of indebtedness was indefinite, it was sufficient to protect the equity of the plaintiffs, and that the court would hold the adoption of the proposal would be just and equitable so far as the minority stockholders and their rights were concerned if the valuation placed upon the stock were equitable and just under all the circumstances. It finally concluded that the defendants should be enjoined from reissuing the stock of its shareholders upon the basis proposed unless the corporation agreed to fix the value thereof at the amount above stated.

Defendants' motion for a new trial was denied and they perfected their appeal to this court, where they specify as error that the court erred in enjoining the plan; that the court erred in enjoining the plan except upon conditions; that the court was without jurisdiction to grant an injunction upon its findings; and that the judgment was arbitrary and capricious and at variance with its findings.

In their brief the appellants do not discuss separately the errors specified by them, but state that the question presented by their appeal is whether the trial court could or should enjoin them from completing their program of acceptance of the provisions of G. S. 1935, ch. 17, art. 16. Appellants make no contention that if what occurred be treated as a reorganization of the original corporation, the minority shareholders may not maintain an action for injunction on the ground the reorganization is as to them oppressive and unfair (19 C. J. S., p. 1341, et seq.) or that if it be treated as a merger or consolidation of corporations, a similar action may not be main-

tained (19 C. J. S., p. 1375, 13 Am. Jur., p. 1117) and therefore we do not pursue that matter further.

Before discussing various contentions made, we note the following: At the time of its original incorporation in 1915, the defendant corporation was organized as one for "profit" with authority to pay a fixed dividend upon its stock (G. S. 1935, 17-1501) and that a shareholder had but one vote, and could not own to exceed five percent of the capital stock (17-1502). These various powers and restrictions were to an extent recognized in the bylaws as they existed from time to time. In 1921 the coöperative marketing act was passed. Under its terms, corporations "shall be deemed non-profit, inasmuch as they are not organized to make profit for themselves, as such, or for their members as such, but only for their members as producers" (G. S. 1935, 17-1602). While they are authorized to guarantee the payment of dividends or interest on the capital stock (17-1605d) the latest adopted bylaws made no provision therefor, but generally speaking provided for distribution of gain to the patrons of the corporation "members and nonmembers alike," a power recognized in part by 17-1604. Under 17-1621, upon sufficient vote other corporations could be brought under the provisions of the act, and it was the effort to bring the original corporation under the latter act that gave rise to the present controversy. No purpose is to be served in pointing out other differences in powers and methods of operation between corporations organized under the two acts, but what has been said clearly develops that as applied to the facts before us, an effort has been made to change the basic financial structure of the original corporation and the interests of the shareholders, stockholders or members as they are variously called.

In stating their contentions, appellants first direct attention to the rule that a general finding made by the trial court determines every controverted question of fact in support of which evidence has been introduced (*Sledd v. Munsell*, 149 Kan. 110, 113, 86 P. 2d 567) and on that basis argue that because the trial court found they had a right to amend their charter and to adopt the proposals referred to, all facts are resolved in their favor. The rule is correctly stated, but its application here must then mean that the court found facts favorable to its conclusion that the proposals adopted were inequitable as applied to the appellees.

In their argument, appellants treat lightly the fact they are attempting to convert a corporation organized for profit and for the benefit of its shareholders, into one which is not for profit, but the distribution of whose gains, under the bylaws, shall be to the patrons. Citing Evans and Stokdyk on the Law of Coöperative Marketing, pages 21, 29 and 58, they direct attention to the difference between commercial and coöperative corporations in their methods of operation, their powers and duties and the fact that in the latter type there is no "profit" available for distribution on the basis of capital invested, and to authorities, which need not be set forth that ordinarily, in the absence of a declaration of dividend or other constructive distribution of surplus or earnings, a stockholder may not compel a distribution, and that may be conceded. But their argument that the plaintiffs are seeking to do that here cannot be sustained. There is no doubt that under the statutes to which reference has been made that upon a favorable two-thirds vote of its stockholders the original corporation had power to come under the coöperative marketing act, but that cannot be construed as a grant of power to the majority to do as they pleased with the property and property rights of the minority. Appellants' argument that by reason of proposal No. 2 each former stockholder received a share for a share, a certificate of indebtedness for $3.75 to equalize its value, and a certificate of indebtedness for $28.75 for each additional share held, and that he is not compelled to withdraw, and therefore his rights have not been affected does not stand analysis, especially when it conclusively appears that the values fixed are purely arbitrary, and that such stocks and certificates represent less than one-half of the property owned by the corporation immediately preceding the adoption of the proposals. To say that the appellee stockholders would be no worse off after the adoption of the proposals than they were before is contrary to the record.

The conditions of proposal No. 2 either force out minority stockholders on the terms provided, or if they remain it is at a sacrifice of their rights. Before the proposal was adopted the plaintiff stockholders were the owners of fully paid stock in a corporation organized for profit and operating under bylaws providing for a fixed dividend. Under the general rule that stock was not subject to assessment (13 Am. Jur., p. 394, 18 C. J. S., p. 1159, and see also G. S. 1947 Supp., 17-3206). The adoption of all the proposals and the bylaws included therein, caused the first corporation to be converted

into a nonprofit one, authorized by G. S. 1935, 17-1609h to adopt bylaws providing for what in effect is an assessment, and one which did, by its adopted bylaws provide that the gains should be divided among its patrons and not its stockholders. We shall not debate whether that may be done under the statutes regulating the two classes of corporations, but shall content ourselves with the observation that conceding that it may be done, the method followed and conditions imposed must be such that minority stockholders who do not care to remain in the new corporation are treated fairly and equitably. In this connection we note also that under G. S. 1935, 17-1621, which authorizes the changeover of a coöperative society to a coöperative marketing corporation, no express provisions are made pertaining to dissenting stockholders, but that under 17-1628, it is provided that the provisions of the general corporation laws shall apply except where such provisions are in conflict with or inconsistent with the provisions of the coöperative marketing act. Not because it is controlling, but merely for the analogy to be drawn, we direct attention to the provisions of the general corporation laws dealing with consolidation and merger of corporations (G. S. 1947 Supp., ch. 17, art. 37) and especially to 17-3707 making provision for determining the value of the shares of a dissenting stockholder who refuses to convert his stock, and for judgment for the amount fixed, as provided in that section. To say the least, it is a legislative declaration that the majority stockholders of a corporation may not with impunity do as they will with the rights of the minority and that the minority is without remedy.

There is also a thread of argument that the appellees are not compelled to surrender their stock, but nowhere does it appear how the corporation can continue to function as one organized under G. S. 1935, ch. 17, art. 15, and as one under G. S. 1935, ch. 17, art. 16. Assuming there were no other reasons which prevented, in view of the provisions of the above statutes and the bylaws of the corporation, the carrying on of activities of each corporation and the distribution of earnings in any form would be an impossibility. The effect of proposal No. 2 is to take from the appellees their rights in the original corporation and its assets, and to substitute therefor the stock and certificates of indebtedness provided in that proposal.

The appellees have filed a brief which treats at length of the contract rights of stockholders in a corporation, the essential differences between coöperative societies and coöperative marketing associa-

tions, and that minority stockholders are not to be compelled to agree with the majority as to the philosophy of coöperatives, but in disposing of appellants' contentions, we do not find it necessary to review the authorities cited by them.

It has not been made to appear that the judgment of the trial court was erroneous and it is affirmed.