No. 38,665

Hensley Hill, Veronica Miller, Doss White, Emma Kuykendall, F. B. White, Chas. Graves, Chas. Dixon, R. L. Evans, Bernhard Koestel, Russell Crotts, H. O. Miller, Al. Miller, John Deupser, Harold Koestel, Claudian Fountain, F. E. Krause, Ross McCoy, Fred Dellenbaugh, Harry Hill, and O. L. Williams, *Appellants*, v. The Partridge Coöperative Equity Exchange, a corporation, and Keith Anderson, Richard French, W. C. Pierce, C. E. Hamilton, F. E. Thompson, B. E. Tedder and Frank Schardein, as officers and directors of said corporation, *Appellees*.

(254 P. 2d 278)

Opinion filed March 7, 1953.

*Don Shaffer* and *Abraham Weinlood,* both of Hutchinson, were on the briefs for the appellants.

*Roy C. Davis, Frank S. Hodge, Eugene A. White, Robert Y. Jones* and *H. Newlin Reynolds,* all of Hutchinson, were on the briefs for the appellees.

The opinion of the court was delivered by

Thiele, J.: This was an action to enjoin the corporate defendant from increasing its capital. Plaintiffs were denied relief and have appealed.

In their petition filed April 12, 1950, plaintiffs alleged that The Partridge Coöperative Equity Exchange, hereafter referred to as the corporation, was a Kansas corporation and that the individual defendants were its officers and directors; that plaintiffs were owners of stock in the corporation; that the corporation had been capitalized at $20,000, divided into 800 shares of $25 each and had been organized on the vote by member plan so that each member had one vote regardless of the number of shares held by him; that on March

30, 1950, a special meeting of the members of the corporation was held for the purpose of voting upon a proposal to increase the capital of the corporation to $50,000 divided into 2,000 shares of $25 each; that the vote on the proposition resulted in a favorable vote of less than two-thirds of the total number of the members of the corporation; that notwithstanding that less than two-thirds of the members voted in favor of the proposition the officers and directors were now claiming that two-thirds had legally voted in favor thereof and were about to and would, unless restrained and enjoined, proceed to do all things necessary to increase the capital and would issue additional stock as if the proposition had in fact been voted favorably by two-thirds of its members. The prayer was that the defendants be enjoined from issuing any stock in excess of $20,000, and for equitable relief.

The defendants answered admitting corporate status and that the corporation was organized on the one vote one member plan; that the meeting was held on March 30, 1950, to increase the capital and otherwise denying generally.

A trial was had on May 16, 1950, and the matter taken under advisement by the trial court. The record does not disclose any request for conclusions of fact and none were made. On August 13, 1951, a judgment was entered denying an injunction and finding that the vote at the meeting of March 30, 1950, on the question of increase of capital was sufficient and legal. Plaintiff's motion for a new trial was later denied and they perfected their appeal to this court.

There is no dispute but that the corporation is acting under the provisions of G. S. 1949, chapter 17, article 16, in fact it was so held in *Hill v. Partridge Coöperative Equity Exchange*, 168 Kan. 506, 214 P. 2d 316. Reference to the statutes will show that such a corporation, under its bylaws, may admit as members or issue common stock only to persons (see 17-1602 [d] for definition of "person") engaged in the production of agricultural products to be handled by or through the association, including the lessees and tenants of lands as specified (17-1606); that each association must prepare and file an application for a charter, setting forth required information (17-1607); that any charter may be altered or amended at any regular meeting or at any special meeting called for that purpose, under conditions set forth, the amendment when so adopted to be filed in accordance with the general corporation law and

be approved by the charter board (17-1608); that each association must adopt bylaws (17-1609) and may provide for the right of members or stockholders to vote by proxy or by mail or by both, and the conditions, manner, form and effects of such votes (17-1609 [c]); and that any corporation organized under the act may increase its capital to any amount by the affirmative vote of two-thirds of its members when organized on the one man, one vote, plan (17-1629).

The record as abstracted and counter-abstracted is very scanty in particulars but discloses no dispute of facts, the controversy having arisen as to the legal effect of what occurred. The following is gleaned from the abstracts: Only one section of the bylaws is abstracted. It reads:

"Section 5. *Voting By Mail.* Voting by proxy shall not be permitted, but absent members may vote on specific questions, other than the removal of directors, by ballots transmitted to the secretary and received by him at or before the meeting at which the vote on such questions is taken; provided that all absent members have been notified, in writing, pursuant to action by the board of directors, of the motion or resolution upon which such vote is taken, and a copy of the same is forwarded with the vote."

Prior to March 30, 1950, the capital of the corporation was $20,000, consisting of 800 shares of $25 each. At a special meeting of the board of directors held March 7, 1950, a resolution was adopted to amend the charter to provide that the capital be $50,000 divided into 2,000 shares of $25 each and that a meeting of the stockholders be held on March 30, 1950. A copy of this resolution is not shown and we do not know just what provisions it may have contained but the form of ballot sent out to those voting by mail, after stating the proposition for amendment contained squares "for" and "against" and concluded:

"In Witness Whereof the undersigned has hereunto signed his name in the presence of the undersigned witness who affirms that the same was signed in his presence by the undersigned stockholder.

_____
Stockholder

Witness:_____"

The election was held March 30, 1950, and an exhibit received in evidence consisted of all ballots and a tally sheet, signed by three persons whose connection is not shown but who evidently counted the ballots, bearing a notation that a two-thirds vote of all stockholders or 81 votes were needed and that votes "for" were of 38

present and 43 mail, and that the votes "against" were 2 present and 6 mail, and that 2 present and 2 mail were blank. On April 3, 1950, the result of the election was certified to the secretary of state, the certificate stating there was a total membership of 121 and that the vote was 81 for and 8 against adoption of the proposition.

The record discloses in more than one place that the number of members of the corporation was 121, but there is no showing as to the number of shares owned by any member. It is obvious that more than 121 shares had been issued otherwise there was no occasion to increase the capital and the number of shares. It is also obvious that if the correct number of shareholders was 121 and that 81 votes were required to increase the capital if any one vote was wrongly counted for the proposition the proposition was not adopted. Although sufficiency of seven ballots is challenged by appellants, we need not in the first instance consider all of the challenges. In his lifetime one William French was a stockholder. He died and his estate was finally settled in 1942, his heirs being found to be Marson Hugh French and Isabell French Parker, who never made any application for the issuance of new shares. The record of the corporation simply showed the stock to be held by the William French estate. Marson French and his sister had given a power of attorney to one R. French and he voted the stock in favor of the proposition. If it be conceded the power of attorney authorized the attorney in fact to vote any corporate stock belonging to his principals, the bylaws prohibited it and the stock should not have been counted. Under such a situation the proposition submitted did not receive the required vote.

Although the president of the corporation announced at the special meeting on March 30, 1950, that there was a total membership of 121, and he and the secretary so certified to the secretary of state, appellees now contend that the F. Z. Miller estate and the French estate should not be included as members; that if they are not the membership is 119 and even though the French vote be not counted there were 80 votes in favor of the proposition or a sufficient number. The record as abstracted is utterly silent with respect to the Miller estate, that is whether it was counted as a member, whether it was voted or how it was voted. Heretofore we have directed attention to the statute as to those an association such as the corporation is may admit as members (G. S. 1949, 17-1606). Appellees contend there is no provision therein that permits

an estate to be a member. For present purposes we shall concede the two estates were ineligible to membership and should not have been counted in determining the number of members. However, it is to be noted that under the above statute there is no requirement that a member hold any specified amount of stock. If otherwise qualified, he can be a member by holding stock. Appellants direct our attention to evidence that stock was issued to Ralph and Harvey Eisiminger, to Glen and Avice Havercroft, and to W. A. and Lester Love, the several pairs being counted as three memberships. They contend that each person should have been counted and the membership roll increased by three. They also contend the French heirs should be counted as members. According to the testimony, the French heirs do not appear on the corporation stock list and have had no shares issued to them and this contention cannot be sustained. The same testimony however discloses that each of the six persons named in pairs does appear as a stockholder and member even though the Eisimingers are brothers, the Havercrofts husband and wife, and the Loves father and son, and a single listing of each pair appears to have been made. This contention is sustained. Under the statute quoted and under the showing made, each was a shareholder and a member and under G. S. 1949, 17-1629, mentioned above, each was entitled to a vote. Without elaboration it may be said that only three votes were cast for the six memberships. The result is that of the 121 memberships first assumed, there must be deducted the French and Miller estates and there must be added three memberships of Eisiminger, Havercroft and Love. The net result is that the membership totaled 122 and that there must have been a vote of 82 in favor, in order that the proposition to increase the capital be adopted. Assuming that every vote cast in favor of the proposition be counted and that includes the French estate vote, the number was not sufficient. Appellees contend that Dellenbach should be counted as voting in favor of the increase. Dellenbach sent in a ballot properly signed and witnessed, but he made no cross on the ballot either for or against the proposition submitted. After the vote had been canvassed and the result had been announced and had been certified to the secretary of state, Dellenbach executed a writing, stating among other things that he signed his mail ballot, had his signature witnessed "and fully thought that I had marked said ballot to approve the said proposed increase in the capital stock"; that it was

his intention that the capital stock be increased and that he took "this means" of notifying the corporation that such was his vote and that he ratified and acquiesced in the increase. The trial court permitted the writing to be introduced in evidence over objection but there is no means for determining whether the so-called ratification did or did not enter into the judgment. Appellees frankly admit they know of no authority whereby such a ratification may be had. It may be observed that if a voter may ratify a vote he never cast, then he may repudiate one he did cast by claiming that he erroneously marked his ballot. The casting of a ballot, even though a blank, is a finality. Results of an election are not to be altered or changed by any such means. We have no hesitancy in saying that the writing should not have been received nor considered. It may be observed that even if this ballot be counted as one for the adoption of the increase of capital, the vote would still be deficient.

We find it unnecessary to discuss appellants' contention that certain mail ballots in favor of the proposition, which were signed by the voter but not witnessed, should be excluded.

We have not overlooked some authority on general corporation law cited by appellees but in our opinion this case depends wholly on the statutes under which the election was had and discussion of those authorities is unnecessary.

The judgment of the trial court is reversed and the cause remanded with instructions to permanently enjoin the defendants from increasing the capital of the corporation beyond $20,000 under the election of March 30, 1950.